IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LATERRAL ENGLAND, *et al.*,

    Plaintiffs,

       v.

CLAYTON COUNTY, GEORGIA, *et al.*,

    Defendants.

CIVIL ACTION NO.
1:23-cv-05443-TRJ

## ORDER

This matter is before the Court on two Motions to Dismiss—the first filed by Defendant Clayton County, Georgia ("Clayton County" or the "County") and Defendants Dionte McCauley, Randy Gaddy, Derrick Doyle, Danilo Jones, Ellonte Johnson, Tameika Smith, and Fred Denson (collectively, the "Officers") (Doc. 57), and the second filed by Defendant Sheriff Levon Allen ("Sheriff Allen") (Doc. 59). Upon review and consideration, and with the benefit of oral argument, Clayton County's motion to dismiss is **GRANTED**, Sheriff Allen's motion to dismiss is **GRANTED IN PART and DENIED IN PART**, and the Officers' motion to dismiss is **GRANTED IN PART and DENIED IN PART**.

### BACKGROUND

Terry Thurmond was a detainee at the Clayton County jail who died during his confinement. (Doc. 50 at ¶¶ 1, 25, 40). Mr. Thurmond suffered from bipolar disorder, schizophrenia, and high blood pressure. (*Id.* at ¶ 70). The circumstances of his death are the subject of this litigation.

1

### A. The Parties

Plaintiff Laterral England is Mr. Thurmond's sister and the appointed administrator of Mr. Thurmond's estate. (Doc. 50 at ¶ 8). Plaintiff Crysten Jackson is the natural guardian of Mr. Thurmond's minor children, and Plaintiff Niyah Thurmond is Mr. Thurmond's adult daughter. (*Id.* at ¶¶ 9–10).

Plaintiffs assert claims against fourteen Defendants, which include: (1) Clayton County, (2) Sheriff Allen, the Sheriff of Clayton County, in his official capacity, (3) through (9) the seven Officers, Clayton County Deputies sued in their individual capacities,[1] (10) CorrectHealth Clayton, LLC ("CorrectHealth"), a Clayton County contractor that provided medical services to the jail, (11) Millenia Medical Services, Inc. ("Millenia"), another contractor of Clayton County that provided medical services to the jail, (12) Jessica Castellanos, a contracted nurse at the jail, (13) Peter Longonje, another contracted nurse at the jail, and (14) Does 1 through 10. (Doc. 50 at ¶¶ 11–24).

### B. The November 28, 2022 Incident

After being arrested at the Atlanta airport for trespass on an unspecified date, Mr. Thurmond was transported to the Clayton County Jail (the "Jail"). (Doc. 50 at ¶ 25). Mr. Thurmond, who had been detained at the Jail before, had a history of "mental health issues and hypertension." (*Id.* at ¶ 26). Thus, the Jail's officers and personnel knew that Mr. Thurmond had mental health concerns. (*Id.* at ¶¶ 26, 37).

---

[1] The original Complaint also brought claims against the Officers in their "official capacity," but the Amended Complaint only includes claims against the Officers in their "individual capacity." (*See* Doc. 1 at ¶¶ 13–19; Doc. 50 at ¶¶ 13–19).

He was identified at processing as having a mental impairment or a mental health history or issue, and he was classified for placement into a "mental health unit" and was assigned to Housing Unit 1, known for housing detainees with mental health concerns. (*Id.* at ¶¶ 27–28). Mr. Thurmond never received mental health treatment or related medication while being housed in the unit, despite his requests for help. (*Id.* at ¶¶ 29–30). On November 28, 2022, after various reports and calls indicated that Mr. Thurmond was having a mental health crisis, the jailers responded, and an "Active 53"[2] radio call went out. (*Id.* at ¶¶ 31, 112). No report or call indicated that Mr. Thurmond was dangerous or acting violently. (*Id.* at ¶¶ 32–34). One or two detainees held Mr. Thurmond down "with minimal force" and tried to calm him down from where he was lying down. (*Id.*)

After officers arrived, Mr. Thurmond became "noticeably more erratic and excited." (Doc. 50 at ¶ 35). Officers began to pull, wrestle, and beat Mr. Thurmond back from the rail on the second floor of the unit. (*Id.*) Mr. Thurmond then became more erratic and tried to escape the officers, behaving in such a way that it was "observably clear he was experiencing mental impairment that substantially limited his ability to rationally respond or process the use of force by the officers." (*Id.* at ¶¶ 35–36). After tasing Mr. Thurmond, five or six officers placed him in the prone position and pinned his legs and arms behind his back, using their hands, knees, and weight to "hog-tie" Mr. Thurmond. (*Id.* at ¶ 38). The officers remained on top of Mr.

---

[2] During oral argument, the parties agreed that "Active 53" likely refers to the Jail's internal code for a specific type of threat to an inmate, but Plaintiffs did not define the term in the Amended Complaint.

Thurmond for over twenty minutes while he laid face down with his arms and legs pinned behind him. (*Id.* at ¶ 39). At some point, Mr. Thurmond informed the officers that he was no longer resisting and complained about his breathing and "losing feeling." (*Id.* at ¶¶ 43–44, 49). Other detainees signaled to the officers that Mr. Thurmond could not breath. (*Id.* at ¶ 45).

Although Georgia officers are trained to stay off an individual's neck when apprehending him, and although the dangers of a prone position restraint are studied and well-known, Defendant Jones used a knee-to-neck restraint on Mr. Thurmond while he was pinned down. (Doc. 50 at ¶¶ 46–47, 65–67). Defendant Denson stepped on Mr. Thurmond while he was restrained in the prone position by Defendants Jones, Gaddy, McCauley, and Johnson (collectively, with Defendant Denson, the "Restraining Officers"). (*Id.* at ¶ 48). The Restraining Officers continued to apply pressure to Mr. Thurmond's neck, shoulder, torso, and legs while he was prone. (*Id.* at ¶ 50). Several officers observed the incident without rendering aid, including Defendants Smith, Doyle, and Denson (the "Observing Officers").[3] (*Id.* at ¶¶ 51, 94). Although Defendant Castellanos, a nurse, arrived on the scene during the incident, she took at least ten minutes to arrive after receiving the call, waited nearly five minutes before checking Mr. Thurmond's breathing, waited another minute before performing chest compressions, and waited another two minutes before applying a defibrillator. (*Id.* at ¶¶ 53–56, 62). Defendant Longonje, the on-duty nurse, did not

---

[3] The Amended Complaint lists Defendant Denson as both a Restraining Officer and an Observing Officer.

4

arrive until chest compressions were already in progress. (*Id.* at ¶ 57). Neither nurse brought a portable oxygen tank, causing further delay. (*Id.* at ¶¶ 63–64).

Because of his mental health conditions and the administration of the prone position for a lengthy period of time, Mr. Thurmond suffered cardiac arrest and died. (Doc. 50 at ¶¶ 40, 71–72). The Clayton County Medical Examiner's Office ruled his death a homicide. (*Id.* at ¶ 41). The Medical Examiner noted that the officers gained control of Mr. Thurmond around 7:19 p.m. and continued to hold him down until 7:36 p.m. (*Id.* at ¶ 42). Plaintiffs assert that all of the officers and medical personnel knew or should have known of Mr. Thurmond's mental health conditions and high blood pressure at the time of his death. (*Id.* at ¶ 70).

### C. Procedural History

On November 28, 2023, Plaintiffs filed this action, and they amended the Complaint on March 13, 2024. (Docs. 1, 50). The claims in the Amended Complaint against Clayton County, Sheriff Allen, and the Officers[4] include:

- **Count I** – excessive force in violation of the Fourteenth Amendment against the Restraining Officers (Doc. 50 at ¶¶ 74–88).

- **Count II** – failure to intervene in violation of the Fourteenth Amendment against the Restraining and Observing Officers (*Id.* at ¶¶ 89–102).

- **Count III** – deliberate indifference to medical need in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 ("Section 1983") against the Restraining and Observing Officers (*Id.* at ¶¶ 103–11).

---

[4] The Amended Complaint also includes claims of deliberate indifference to medical need (Count V), professional negligence (Count VIII), vicarious liability (Count IX), and negligent hiring, retention, training, and supervision (Count X) against the other defendants who have not moved to dismiss the Amended Complaint. (Doc. 50 at ¶¶ 131–48, 183–89, 190–94, 195–98).

- **Count IV** – pattern or practice of deliberate indifference to medical need in violation of Section 1983 against Clayton County and Sheriff Allen (*Id.* at ¶¶ 112–30).

- **Count VI** – deliberate indifference to mental health crises in violation of the Fourteenth Amendment and Section 1983 against Clayton County, Sheriff Allen, CorrectHealth, and Millenia (*Id.* at ¶¶ 149–70).

- **Count VII** – unconstitutional violations of Title II of the Americans with Disabilities Act ("ADA") against Sheriff Allen and the Restraining Officers (*Id.* at ¶¶ 171–82).

- **Count XI** – punitive damages and attorney's fees against all Defendants (*Id.* at ¶¶ 199–200).

On March 27, 2024, Clayton County and the Officers moved to dismiss the Amended Complaint, and Sheriff Allen separately moved to dismiss the Amended Complaint. (Docs. 57, 59). On March 24, 2025, the Court heard oral argument from the parties on the pending Motions to Dismiss. (Doc. 90).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); FED. R. CIV. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, a claim will survive a motion to dismiss if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, at the motion to dismiss stage, "all well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v.*

*FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citation omitted). Courts are not required, however, to accept as true legal conclusions "couched" as factual allegations. *Twombly*, 550 U.S. at 555 (citation omitted).

DISCUSSION

### A.  Claims Against Doe Defendants

As a preliminary matter, Plaintiffs name Does 1 through 10 as Defendants in the Amended Complaint, alleging that they "are parties that have not yet been identified but who are liable for the injuries alleged in this Complaint." (Doc. 50 at ¶ 24). "As a general matter, fictitious-party pleading is not permitted in federal court" unless the plaintiff's description of the defendant is very specific. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Plaintiffs describe Does 1 through 10 as "employees, agents, or contractors of Defendants CorrectHealth and Millenia." (Doc. 50 at ¶¶ 189–90). Such a broad description is insufficient because it does not allow service of process. *Richardson*, 598 F.3d at 738 (dismissing "John Doe" as a defendant when only description was that he was a guard at an institute where there were numerous guards); *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (fictitious parties are permissible only when "the plaintiff's description of the defendant is 'sufficiently clear to allow service of process'"). Thus, Does 1 through 10 are **DISMISSED.** To the extent Plaintiffs identify additional individual defendants through discovery, the Court will consider a motion to amend to add such parties pursuant to Federal Rule of Civil Procedure 15.

### B. Claims Against Clayton County

Plaintiffs assert three claims against Clayton County: (1) pattern or practice of deliberate indifference to medical need under Section 1983 (Count IV), (2) deliberate indifference to mental health crises under the Fourteenth Amendment and Section 1983 (Count VI), and (3) punitive damages and attorney's fees (Count XI). (Doc. 50 at ¶¶ 112–30, 149–70, 199–200).

Under Section 1983, every person who subjects any U.S. citizen "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Local governments are "persons" for purposes of Section 1983, but the Supreme Court "has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). And where the constitutional deprivation at issue is a denial of adequate medical care, a plaintiff cannot rely upon the theory of *respondeat superior. McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1263 (11th Cir. 2010).

Rather, to impose Section 1983 liability on a municipality, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Grochowski v. Clayton Cnty.*, 961 F.3d 1311, 1321 (11th Cir. 2020) (citation modified); *McDowell*, 392 F.3d at 1289.

This "deliberate conduct" must be the "moving force" behind the injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989); *see also Jernard v. Owens*, No. 4:11-cv-17-CDL-MSH, 2012 WL 2131117, at *5–6 (M.D. Ga. May 10, 2012). To demonstrate a "custom or policy" for Section 1983 purposes, a plaintiff may rely on "(1) an official government policy, (2) the actions of an official fairly deemed to represent government policy, or (3) a custom or practice so pervasive and well-settled that it assumes the force of law." *Sch. Bd. of Broward Cnty.*, 604 F.3d at 1263 (citation modified); *McDowell*, 392 F.3d at 1290.

Plaintiffs allege two county "policies"—the County's deliberate indifference to medical need despite a history of similar constitutional violations and the County's underfunding of inmate medical and mental health care. As to the first policy, Plaintiffs allege that (1) "Defendant Clayton County permitted and utilized the policy, custom and practice of intentionally delaying or denying inmates access to medical treatment," (2) this policy was the "moving force behind the deliberate indifference to Mr. Thurmond's serious medical need," and (3) "Mr. Thurmond's pain and suffering, as well as his subsequent death, w[ere] proximately caused by this policy, custom and practice." (Doc. 50 at ¶¶ 124–26, 128–30). In support of this first alleged policy, Plaintiffs identify the prior constitutional violations of Clayton County's previous sheriff and six different instances of jail personnel "intentionally disregarding . . . serious medical needs as part of this policy or custom." (*Id.* at ¶¶ 112–23). As to the second policy, the Amended Complaint alleges that Clayton County's policy of "underfunding the medical care of inmates with serious mental

health issues was evident in the lack of any padded cells" and in the lack of adequate staff to provide mental health crisis intervention. (*Id.* at ¶ 158). Plaintiffs point to "fourteen grievances" from 2018 to 2022 about the lack of mental health care in the Jail. (*Id.* at ¶ 163). Plaintiffs argue that Clayton County ratified the conduct of its private contractors, CorrectHealth and Millenia, and its employees. (*Id.* at ¶¶ 167–70). And under Count IV of the Amended Complaint, Plaintiffs conclude that Clayton County "permitted" the policy of delaying medical treatment because "it reduced the financial burden" on the County. (*Id.* at ¶ 128). Both alleged policies fail for the same reason—they fail to establish any control or decision-making by or on behalf of the County that led to Mr. Thurmond's death.

First, Plaintiffs have failed to identify either (1) "an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *See Grech*, 335 F.3d at 1329 (citing *Monell*, 436 U.S. at 690–91). Neither of the policies identified in the Amended Complaint are official Clayton County policies. And, Plaintiffs have failed to sufficiently allege facts that demonstrate that Clayton County's past and present sheriff, or his deputies, are "final policymakers" able to act on behalf of Clayton County. It is well-settled that Georgia counties have no "authority and control over the sheriff's law enforcement function"—sheriffs act on behalf of the State. *See Grech*, 335 F.3d at 1347. "A sheriff's policy or practice cannot be said to speak for the county because the county has no say about that policy or practice." *Id.* Thus, neither the Clayton County sheriff (past or present) or his deputies are "final policymakers" able

to act on Clayton County's behalf.

Second, Plaintiffs have failed to allege a "custom or practice so pervasive and well-settled that it assumes the force of law," either through similar violations or through the County's budgeting decisions. *See Sch. Bd. of Broward Cnty.*, 604 F.3d at 1263. Four of the six instances that Plaintiffs allege are similar delays to treat an inmate's medical condition occurred over the span of two years prior to Mr. Thurmond's death. (Doc. 50 at ¶¶ 116–120, 123). Generally, this Circuit has required substantially more instances over a shorter period of time to establish an unofficial custom. *See Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2023) (finding four isolated incidents in nine months insufficient to establish a custom); *Hawk v. Klaetsch*, 522 F. App'x 733, 735 (11th Cir. 2013) ("We fail to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse."); *see also Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) ("[F]our cases in four years would have been insufficient" for notice.).

Even more, the Amended Complaint alleges that Clayton County's prior sheriff, Victor Hill,[5] "established an unofficial policy or custom of projecting a tough image that equated toughness with disregard and deliberate indifference to constitutional rights," and the interim sheriff later adopted that policy by informing inmates that: "This is still Victor Hill's jail, Nothing's changed." (Doc. 50 at ¶¶ 114, 122). But the Amended Complaint does not allege any action taken by Clayton County

---

[5] Hill was convicted of violating the constitutional rights of detainees at the Clayton County Jail and removed from office. (Doc. 50 at ¶¶ 113, 121).

or its officials that embraced or even acknowledged the conduct of Hill or Sheriff Allen. Even if Sheriff Allen's conduct could be construed as a continuation of Hill's (and that theory is dubious), Plaintiffs have failed to allege any facts that tie the conduct of Hill and Sheriff Allen to Clayton County or show corporate control over them. *See Grech*, 335 F.3d at 1347 ("[I]f a rogue sheriff adopted an unconstitutional law enforcement policy or practice, the county has no authority to prevent or alter it and, in turn, incurs to § 1983 liability for it.").

As to underfunding, nothing in the Amended Complaint alleges a "deliberate" or a "conscious choice" by Clayton County that would indicate that its budgeting decisions required the Jail to make the decisions that it made with its budget. *City of Canton, Ohio*, 489 U.S. at 389 (citation modified); *Smith v. City of Johns Creek*, No. 24-10815, 2025 WL 313165, at *4 (11th Cir. Jan. 28, 2025) ("Under *Monell*, a county is liable under Section 1983 *only* for acts for which the county is actually responsible." (citation modified)). "The fact that the [County's] budget practices resulted in understaffing does not amount to a purposeful disregard which would violate any citizen's constitutional rights." *Boyd v. Nichols*, 616 F. Supp. 2d 1331, 1345 (M.D. Ga. 2009) (quoting *McDowell*, 392 F.3d at 1293). And to the extent Plaintiffs assert that Clayton County ratified the conduct of its private contractors or other Clayton County employees, Plaintiffs have not alleged how the County itself authorized these actions, even tacitly, or displayed deliberate indifference towards them. *See Whitaker*, 126 F. Supp. 3d at 1320 ("[A] municipality's failure to correct the constitutional offensive actions of its employees can rise to the level of a [custom] if the municipality tacitly

authorizes these actions or displays deliberate indifference" to them. (citing *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001))). Plaintiffs' conclusion that the actions of County contractors were ratified, without more, is not sufficient. (Doc. 50 at ¶ 168). Therefore, Plaintiffs fail to plausibly allege a Section 1983 claim[6] against Clayton County, and those claims must be dismissed.

Additionally, Plaintiffs cannot recover punitive damages from Clayton County, even if their Section 1983 claim were viable. *See Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1299 n.30 (11th Cir. 1998) (explaining that municipalities are immune from punitive damages in Section 1983 claims). And, because Plaintiffs cannot prevail on any of their claims against Clayton County, they cannot recover attorney's fees. *See* 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the *prevailing party*, other than the United States, a reasonable attorney's fee." (citation modified)).

### C. Claims Against Sheriff Allen

Plaintiffs assert four claims against Sheriff Allen in his official capacity only: (1) pattern or practice of deliberate indifference to medical need under Section 1983 (Count IV), (2) deliberate indifference to mental health crises under the Fourteenth Amendment and Section 1983 (Count VI), (3) unconstitutional violations of the ADA (Count VII), and (4) punitive damages and attorney's fees (Count XI). (Doc. 50 at

---

[6] Plaintiffs' deliberate indifference claim (Count VI) fails for the same reasons. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) ("To prevail on a deliberate indifference to [a] serious medical need claim, Plaintiffs must show: . . . the defendants' deliberate indifference to [a serious medical] need[.]"). Plaintiffs fail to tie Sheriff Allen's decision-making in the Jail with regard to the provision of mental health care to any deliberate action or inaction by the County.

¶¶ 112–30, 149–70, 171–82, 199–200).

1. <u>Sheriff Allen is entitled to Eleventh Amendment immunity as to the Section 1983 claims.</u>

The Eleventh Amendment "bars suits brought in federal court when the State itself is sued and when an arm of the State is sued." *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1298 (11th Cir. 2023). "To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State." *Bullock v. Paris*, No. 24-10674, 2024 WL 4717950, at *2 (11th Cir. Nov. 8, 2024) (citation modified). "A sheriff's authority and duty to administer the jail in his jurisdiction flows from the State," and the sheriff serves as an arm of the State in promulgating policies and procedures in Georgia county jails. *Id.*; *Purcell ex rel. Estate of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1325 (11th Cir. 2005) (citation modified). Because Sheriff Allen functions as an arm of the State in his official capacity, and Plaintiffs only sued Sheriff Allen in his official capacity, he is entitled to sovereign immunity with respect to Plaintiffs' Section 1983 claims (Counts IV and VI).[7] *See Myrick*, 69 F.4th at 1295–96 (finding that a sheriff acted as an arm of the State when "providing medical care to detainees"); *Purcell*, 400 F.3d at 1325; *see also*

---

[7] Plaintiffs do not meaningfully respond to Sheriff Allen's sovereign immunity argument. Plaintiffs cite to two Supreme Court cases for the proposition that the analysis "is unnecessary to claims where Congress has clearly expressed an intent to abrogate sovereign immunity." (Doc. 65 at 2). These cases are inapposite to the Section 1983 claims—*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), addresses Congress' powers under Section 5 of the Fourteenth Amendment, and *United States v. Georgia*, 546 U.S. 151, deals with Title II of the ADA's valid abrogation of state sovereign immunity.

*Andrews v. Biggers*, 996 F.3d 1235, 1235–36 (11th Cir. 2021).

      2.  <u>Plaintiffs state a claim against Sheriff Allen under Title II of the ADA.</u>

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To succeed on an ADA Title II claim, a plaintiff must demonstrate that: (1) he is "a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (citation modified). ADA Title II claims may be brought against defendants in their official capacities "because official capacity suits are treated as suits against the governmental entity." *Nesbitt v. Long*, No. 5:19-cv-67, 2020 WL 429490, at *4 (M.D. Ga. Jan. 28, 2020) (citing *Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 478 (11th Cir. 2015)).

To hold a government entity, or here, Sheriff Allen, liable, "a plaintiff must [ ] show that an 'official' had actual knowledge of discrimination in the entity's programs and failed to adequately respond. At a minimum, the official must have had the authority to address the alleged discrimination and to institute corrective measures on the entity's behalf." *Estate of Tilson v. Rockdale Cnty.*, No. 1:19-cv-01353-JPB, 2021 WL 913937, at *4 (N.D. Ga. Mar. 10, 2021) (citing *Silberman*, 927 F.3d at 1134).

In other words, such an official must have "substantial supervisory authority"—the authority to make an official decision for the entity and correct discriminatory practices for the entity. *Silberman*, 927 F.3d at 1135; *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 349–50 (11th Cir. 2012). "Where a plaintiff seeks compensatory damages, . . . the plaintiff 'must clear an additional hurdle' and show that the entity engaged in intentional discrimination." *Estate of Tilson*, 2021 WL 913937, at *3 (citing *Silberman*, 927 F.3d at 1134).

Construing the facts in the light most favorable to Plaintiffs, Plaintiffs have sufficiently alleged an ADA Title II claim against Sheriff Allen. The Amended Complaint alleges that Mr. Thurmond was "a qualified individual with a disability" because "he suffered from a mental impairment that, without the proper medication or treatment, substantially limited or restricted one or more of his major life activities." (Doc. 50 at ¶ 173); *see also Silberman*, 927 F.3d at 1134. Plaintiffs allege that Mr. Thurmond was "denied the benefits and services that would have allowed him to function and take care of himself in Jail by reason of his disability," as he was denied access to mental health services and medication while being detained. *Silberman*, 927 F.3d at 1134; (Doc. 50 at ¶¶ 176, 178). And Plaintiffs allege that the denial of his medication was "by reason of the plaintiff's disability," as "accommodation of Mr. Thurmond's mental illness was not in-line with the policy and practice of making the Jail Georgia's toughest para-military jail," and the excessive force used against Mr. Thurmond was "not because of any legitimate need to subdue or control Mr. Thurmond," but was because "he had a mental health episode." (Doc.

50 at ¶¶ 177, 179); *see also Silberman*, 927 F.3d at 1134.

Additionally, Sheriff Allen is an official "with the authority to address the alleged discrimination and to institute corrective measures" in the Jail. *Estate of Tilson*, 2021 WL 913937, at *4 (citation omitted). Georgia sheriffs are responsible for the operations of their county jail. *See Manders v. Lee*, 338 F.3d 1304, 1306 (11th Cir. 2003) ("As the elected sheriff, defendant [ ] is responsible for the operation of the jail in Clinch County, Georgia, for establishing use-of-force policy at the jail, and for hiring, training, and disciplining his deputies who work in the jail."). And Plaintiffs may be able to demonstrate, through fact discovery, that Sheriff Allen "had actual knowledge of discrimination in the entity's programs and failed to adequately respond." *Estate of Tilson*, 2021 WL 913937, at *4 (citation omitted). Construing Plaintiffs' allegations as true, Sheriff Allen's lack of response to the treatment of mental health detainees at the Jail may constitute "deliberate indifference," thus showing "intentional discrimination." *Silberman*, 927 F.3d at 1134 (citing *Liese*, 701 F.3d at 348). Therefore, Plaintiff's ADA Title II claim against Sheriff Allen may proceed to discovery.

### 3. Plaintiffs may recover reasonable attorney's fees under the ADA.

Plaintiffs assert a claim for punitive damages and attorney's fees against Sheriff Allen (Count XI). (Doc. 50 at ¶¶ 199–200). Because Sheriff Allen is immune to Section 1983 claims, Plaintiffs cannot recover attorney's fees or punitive damages for those claims. *See* 42 U.S.C. § 1988(b); *Anderson v. Atlanta*, 778 F.2d 678, 688 (11th Cir. 1985). Similarly, Title II of the ADA does not permit the recovery of

17

punitive damages. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("[P]unitive damages may not be awarded . . . in suits brought under § 202 of the ADA."). The ADA does, however, permit the Court to award reasonable attorney's fees to the prevailing party in an action to enforce Title II. *See* 28 C.F.R. § 35.175. Therefore, Plaintiffs' claim for attorney's fees against Sheriff Allen may proceed.

### D. Claims Against the Officers

Plaintiffs allege three claims against the Observing Officers: (1) failure to intervene in violation of the Fourteenth Amendment (Count II), (2) deliberate indifference to medical need in violation of the Fourteenth Amendment and Section 1983 (Count III), and (3) punitive damages and attorney's fees (Count XI). (Doc. 50 at ¶¶ 89–102, 103–11, 199–200). The Observing Officers include Smith, Doyle, and Denson. (*Id.* at ¶¶ 51, 94). Plaintiffs allege five claims against the Restraining Officers: (1) excessive and deadly force in violation of the Fourteenth Amendment (Count I), (2) failure to intervene in violation of the Fourteenth Amendment (Count II), (3) deliberate indifference to medical need in violation of the Fourteenth Amendment and Section 1983 (Count III), (4) unconstitutional violations of the ADA (Count VII), and (5) punitive damages and attorney's fees (Count XI). (*Id.* at ¶¶ 74–111, 171–82, 199–200). The Restraining Officers include Jones, Gaddy, McCauley, Johnson, and Denson. (*Id.* at ¶ 48). The Officers contend that they are all entitled to qualified immunity. (Doc. 57-1 at 8–13).

1. <u>The Officers are not entitled to qualified immunity on any of Plaintiffs' claims.</u>

"Qualified immunity shields a government official from liability" in his official

capacity "unless he violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019) (citation modified); *Alcocer v. Mills*, 906 F.3d 944, 950–51 (11th Cir. 2018). Once a government official demonstrates that his actions were within his discretionary authority, the burden shifts to the plaintiff to demonstrate that the official is not entitled to qualified immunity. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994); *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009). A government official is acting within his discretionary authority when "[the] actions were undertaken pursuant to the performance of his duties and were within the scope of his authority." *Jordan*, 38 F.3d at 1566.

Here, the Officers' actions were within their discretionary authority. All of the allegations against the Officers concern the Officers' acts of detaining and observing Mr. Thurmond while they were in the Jail and on duty. *See Jordan*, 38 F.3d at 1555–56. Plaintiffs do not dispute in their response brief that the Officers were acting within their authority. Thus, the burden shifts back to Plaintiffs to show the Officers are not entitled to qualified immunity. *Lewis*, 561 F.3d at 1566. To do so, Plaintiffs must show that (1) the Officers "violated a constitutional right," and (2) "the right was clearly established at the time of the alleged violation." *Piazza*, 923 F.3d at 951.

> a. *Plaintiffs have demonstrated a plausible violation of constitutional rights.*

Three of Plaintiffs' claims against the Officers rest on the violation of a constitutional right, specifically, the Fourteenth Amendment—(1) excessive and deadly force against the Restraining Officers (Count I), (2) failure to intervene against

all the Officers (Count II), and (3) deliberate indifference to medical need against all the Officers (Count III). Plaintiffs have plausibly pled a constitutional violation based on all three.

First, Plaintiffs have alleged a violation of Mr. Thurmond's right to be free from excessive and deadly force. (Doc. 50 at ¶¶ 74–88). "The Fourteenth Amendment protects pretrial detainees against the use of excessive force by their jailors." *Arries v. Hill*, 686 F. Supp. 3d 1279, 1294–95 (N.D. Ga. 2022). The Eleventh Circuit has repeatedly affirmed that "[o]nce a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need." *Piazza*, 923 F.3d at 953 (citation modified); *see also Sindell v. Coach*, No. 24-13529, 2025 WL 2400462, at *3 (11th Cir. Aug. 19, 2025). "When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or is otherwise incapacitated—that use of force is excessive." *Id.* (citation modified); *see also Ort v. White*, 813 F.2d 318, 327 (11th Cir. 1987) ("A fourteenth amendment violation occurs . . . where prison officers continue to employ force or other coercive measures after the necessity for such coercive action has ceased."). "A single punch to a non-resisting detainee constitutes excessive force." *Quinette v. Reed*, 805 F. App'x 696, 705 (11th Cir. 2020) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008)).

Plaintiffs have sufficiently alleged that each of the Restraining Officers continued to restrain and use force nearly twenty minutes *after* Mr. Thurmond had stopped resisting. (Doc. 50 at ¶¶ 48–50, 74–88, 179) (describing how Mr. Thurmond

said "I quit," pleaded for help, and had stopped resisting while the Restraining Officers held him in the prone position). Plaintiffs specifically allege that Officer Jones placed his knee on Mr. Thurmond's neck, Officer Denson stepped on Mr. Thurmond, and Officers Gaudy, McCauley, and Johnson physically restrained Mr. Thurmond in the prone position. (*Id.* at ¶¶ 48, 78, 79). If a single punch is sufficient to constitute excessive force, then continuing to kneel on, step on, and hold Mr. Thurmond in the prone position after resistance has ended is surely sufficient. *Dyksma v. Pierson*, No. 4:17-cv-41 (CDL), 2018 WL 3430684, at *20–21 (M.D. Ga. July 16, 2018), *aff'd*, 763 F. App'x 909 (11th Cir. 2019) (using the prone position to restrain an inmate after he stopped resisting was found to be unconstitutional).

Second, Plaintiffs have alleged a failure to intervene against all the Officers. (Doc. 50 at ¶¶ 89–102). "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (citation modified). "[I]n order for an officer to be liable for failing to stop police brutality, the officer must be in a position to intervene." *Id.*; *see also Lewis v. Blue*, No. 2:09-CV-862-WKW, 2010 WL 730210, at *6 (M.D. Ala. Mar. 3, 2010) (dismissing plaintiff's failure to intervene claim based on qualified immunity where the allegations "never state" that the deputy "actually witnessed" the violation or was in a position to intervene in any way). Here, Plaintiffs sufficiently allege a violation of the Fourteenth Amendment because of the Officers' failure to intervene. Plaintiffs allege that Officers Smith and Doyle stood on the first

floor and Officer Denson stood on the second, all "observ[ing], communicat[ing] with, and assist[ing] the Restraining Officers while they restrained Mr. Thurmond." (Doc. 50 at ¶¶ 90–91). Because of the proximity and attention to the restraining of Mr. Thurmond, it is plausibly alleged that the Observing Officers were "in a position to intervene" and each failed to do so. *See Ensley*, 142 F.3d at 1407. The same logic applies to each of the Restraining Officers, who physically restrained Mr. Thurmond and did nothing to stop it. (Doc. 50 at ¶¶ 96–99) ("Given the amount of time Mr. Thurmond was forcibly restrained while not resisting or otherwise helpless, the Observing Officers and each of the Restraining Officers had a reasonable and realistic opportunity to intervene but chose not to do so[.]").

Third, Plaintiffs have alleged a deliberate indifference to medical need claim against all the Officers. (Doc. 50 at ¶¶ 103–11). As stated previously, to state a claim for deliberate indifference to a serious medical need, Plaintiffs must adequately allege that (1) there was "an objectively serious medical need," (2) the deputies acted with subjective deliberate indifference to that serious medical need," and (3) "he suffered an injury caused by [the Defendants'] wrongful conduct." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1188 (11th Cir. 2020) (citation modified). An officer acts deliberately indifferent when he (1) "has subjective knowledge of a risk of serious harm," (2) "disregards this risk," and (3) "acts with more than gross negligence." *Id.* (citation modified).

As previously established, Plaintiffs have alleged that Mr. Thurmond had a serious medical condition. Even though Plaintiffs have not proven subjective knowledge at this stage, they have sufficiently alleged it, which is sufficient to

overcome the Officers' claimed qualified immunity at the motion to dismiss stage. *Arries*, 686 F. Supp. 3d at 1305. Plaintiffs allege that the Officers knew about Mr. Thurmond's medical needs because Mr. Thurmond had been detained at the Jail previously, and his medical and mental health issues were known to the Sheriff's Office, as well as Jail employees. (Doc. 50 at ¶ 26). Additionally, Mr. Thurmond lived in Housing Unit 1, which was known to house mental health inmates, and the jailers' response that led to his death was because of "various reports or calls" indicating he was having a mental health crisis. (*Id.* at ¶ 28). If the Officers knew, disregarded that risk, and restrained or observed Mr. Thurmond (as explained as to each Officer individually above), resulting in Mr. Thurmond's death, then Plaintiffs may be able to establish their claim through discovery. Thus, Plaintiffs have sufficiently alleged three Fourteenth Amendment violations against the Officers. But the Court must still determine whether each of the three rights was "clearly established."

> ### b. Plaintiffs have demonstrated that Mr. Thurmond's rights were clearly established.

To overcome qualified immunity, Plaintiffs must also demonstrate that the law governing the case was "clearly established" when the violation occurred. *Piazza*, 923 F.3d at 955. "A legal principle must be settled and clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (citation modified). The essential question is whether the officer had "fair warning" that his actions were unconstitutional. *Id.* (citing *Glasscox v. City of Argo*, 903 F.3d 1207, 1217–18 (11th Cir. 2018)). "Only prior decisions from the United States Supreme Court, [the Eleventh Circuit], or the relevant state supreme court

can put officers on notice regarding the constitutionality of their actions." *Bradley v. Benton*, 10 F.4th 1232, 1242–43 (11th Cir. 2021).

All three of the constitutional violations claimed by Plaintiffs were based on clearly established laws. First, the Eleventh Circuit has clarified that "for decades, [its] decisions have embraced and reiterated the principle that an officer may not continue to use force after a detainee has clearly stopped resisting." *Piazza*, 923 F3d at 955–56 (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002), *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991), and *Ort*, 813 F.2d at 327). Second, once it is determined that "the use of force is not entitled to qualified immunity and other officers could have intervened but did not, the Court does not conduct a separate clearly established analysis pertaining to each officer's failure to intervene.'" *Helm v. Rainbow City*, 989 F.3d 1265, 1278 (11th Cir. 2021)); *Jackson v. Catanzariti*, No. 6:12-cv-113, 2019 WL 4874809, at *25 (S.D. Ga. Oct. 2, 2019) ("Nonfeasance by an officer in the face of another officer's excessive force, when that officer is in a position to intervene, violates clearly established law."). Third, the deliberate indifference of an inmate's serious medical condition is also clearly established. "[I]t is clearly established that officers violate the constitution when they use force against an inmate that causes him obvious harm and then 'ignore without an explanation a prisoner's serious medical condition that is known or obvious to them.'" *Arries*, 686 F. Supp. 3d at 1305 (citing *Danley v. Allen*, 540 F.3d 1298, 1312 (11th Cir. 2008)). Thus, all three alleged constitutional violations were "clearly established" rights, and the Officers are not entitled to qualified immunity at this stage. Plaintiffs' request for punitive damages

and attorney's fees against the Officers (Count XI) may also proceed. *See* 42 U.S.C. § 1988; *see also Glover v. Ala. Dep't of Corr.*, 734 F.2d 691, 694 (11th Cir. 1984), *reversed on other grounds by Kentucky v. Graham*, 473 U.S. 156 (1985).

      2.  <u>Plaintiffs did not improperly aggregate the Defendants in their Amended Complaint.</u>

"[T]he Federal Rules do not permit a party to aggregate allegations against several defendants in a single, unspecific statement, but instead require the pleader to identify (albeit generally) the conduct of *each* defendant giving rise to his claims." *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005). Section 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Alcocer*, 906 F.3d at 951. Although the Officers argue that Plaintiffs improperly aggregated the allegations against the Officers, Plaintiffs have sufficiently identified which Officers were involved in what conduct. Plaintiffs' grouping of the Officers as either "Restraining" or "Observing" does not render the pleading insufficient. Rather, the pleaded claims are sufficiently detailed to alert *each* officer as to the claims against him, as detailed above. And though not dispositive of the issue, there is notably a low likelihood of surprise to the Officers regarding what they are being accused of doing where the incident was recorded and preserved on CCTV footage. (Doc. 50 at ¶¶ 33, 56).

      3.  <u>The ADA claim against the Restraining Officers is dismissed.</u>

Individuals cannot be sued under Title II of the ADA.[8] *Owens*, 602 F. App'x at

---

[8] During oral argument, Plaintiffs conceded that they were unaware of any case law allowing ADA claims against individual officers.

478 ("[O]nly public entities may be liable under the ADA[.]"); *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005). Because Plaintiffs have sued the Restraining Officers solely in their individual capacities,[9] the ADA claim against them (Count VII) is dismissed. In sum, the Officers' motion to dismiss (Doc. 57) is **GRANTED** only with respect to the ADA claim (Count VII) against the Restraining Officers, and the motion is **DENIED** as to all other claims against the Officers (Counts I–III, XI).

CONCLUSION

For the reasons state above, Clayton County and the Officers' Motion to Dismiss (Doc. 57) is **GRANTED IN PART and DENIED IN PART**, and Sheriff Allen's Motion to Dismiss (Doc. 59) is **GRANTED IN PART and DENIED IN PART**. Plaintiffs' claims against Clayton County and the Doe Defendants, Plaintiffs' Section 1983 claims against Sheriff Allen (Counts IV and VI), and Plaintiffs' ADA claim against the Officers (Count VII) are **DISMISSED** for failure to state a claim. The Clerk is **DIRECTED** to terminate Clayton County, Georgia and the Doe Defendants as parties to this action. The deadline for Sheriff Allen and the Officers to file their answers to the remaining counts of the Amended Complaint is **October 2, 2025**.

SO ORDERED, this 18th day of September, 2025.

_____
TIFFANY R. JOHNSON
United States District Judge

---

[9] Although the case caption lists the Officers in their "individual and official capacity," the Amended Complaint clarifies that the Officers are being sued only in their individual capacities. (Doc. 50 at ¶¶ 13–19).

26